GRACE B. HEADEN AND ROBERT E. BENCINI, EXECUTORS OF THE ESTATE OF NANCY E. BENCINI, AND AS INDIVIDUALS v. BETTY BENCINI JACKSON AND HAMILTON B. TATUM.

(Filed 16 June, 1961.)

**Adoption § 6: Wills §§ 47, 65—**

Where the adoptive parent is named a legatee in the will of her mother but dies prior to the mother's death, the adoptive child takes the personalty bequeathed his adoptive mother under G.S. 31-42.1, since under the provisions of G.S. 48-23 the adopted child has the same standing as though he had been born to his adoptive parent.

WINBORNE, C.J., dissenting.

PARKER, J., joins in dissent.

APPEAL by defendant Hamilton B. Tatum from *Olive, J.,* January 1961 Civil Term, GUILFORD Superior Court — Greensboro Division.

Civil action by the executors to have the court determine, by de-

claratory judgment, the rights of Hamilton B. Tatum under the will of Nancy E. Bencini. The pertinent facts are stipulated. In substance they are: Nancy E. Bencini executed her will on October 22, 1948. She died on March 6, 1960. The estate consists entirely of personalty. The will did not contain a residuary clause. Item First disposed of the entire estate: "I give, devise and bequeath all of my property, both real and personal, wherever situate, to my four children, Robert E. Bencini, Robah B. Tatum, Grace B. Headen, Margaret B. Walker, and my granddaughter, Betty Bencini Jackson (the daughter of my deceased son, R. Banks Bencini) share and share alike."

Robah B. Tatum, daughter of testatrix, died on June 26, 1959. In 1924 she adopted for life the defendant, Hamilton B. Tatum. He survives as her only child. Among the facts stipulated are the following:

"7. From the date of the adoption of Hamilton B. Tatum by Robah B. Tatum in 1924, and until her death, the said Nancy E. Bencini, testatrix, treated the said Hamilton B. Tatum in the same manner and with the same apparent regard and affection as her natural grandchildren."

The court entered judgment in pertinent part:

"1. The Court finds that the defendant Hamilton B. Tatum, although lawfully adopted for life by the legatee, Robah B. Tatum, and did survive the testator, was not the issue of the legatee under the provisions of G.S. 31-42.1.

"2. That the legacy to Robah B. Tatum lapsed and the said Hamilton B. Tatum does not share in the estate of Nancy E. Bencini."

The appellant excepted to the conclusions and the judgment, and appealed.

*Douglas, Ravenel, Josey & Hardy, for plaintiffs, appellees.*
*Morgan, Byerly, Post & Van Anda, for defendant Tatum, appellant.*

HIGGINS, J. The testatrix, Nancy E. Bencini, executed her will in 1948. She gave her daughter, Robah B. Tatum, one fifth of her estate which consisted entirely of personalty. The will did not contain a residuary clause. Robah B. Tatum died in June, 1959, leaving Hamilton B. Tatum, the appellant, whom she adopted in 1924 as her only child. The testatrix died in March, 1960. Does the legacy given to Robah B. Tatum go to the defendant, Hamilton B. Tatum, or does it lapse? The court held that the legacy lapsed and the adopted child

does not share in the estate. The question here involves the property rights of an adopted child.

Three of our cases give the step-by-step history of an adopted child's property rights as they have been changed from time to time by legislative enactments: *Wilson v. Anderson*, 232 N.C. 212, 59 S.E. 2d 836, decided June 9, 1950; *Bradford v. Johnson*, 237 N.C. 572, 75 S.E. 2d 632, decided April 29, 1953; and *Bennett v. Cain*, 248 N.C. 428, 103 S.E. 2d 510, decided May 21, 1958. The *Bennett* case was decided since the change in the adoption laws made by Chapter 813, Session Laws of 1955, now codified, in part, as G.S. 48-23, 1959 Cumulative Supplement. The Act became effective July 1, 1955. Among other things, it provided: The adopted child shall have the right "to inherit real and personal property by, through, and from the adoptive parents in accordance with the statutes of descent and distribution. An adopted child shall have the same legal status, including all legal rights and obligations of any kind whatsoever, as he would have had if he were born the legitimate child of the adoptive parent or parents at the date of the signing of the final order of adoption, except that the age of the child shall be computed from the date of his actual birth." The Act further provides that after the adoption the natural parents cannot take from the adopted child, who likewise cannot take from the natural parents, either under the laws of descent or distribution.

The faculty of the University of North Carolina Law School and the student editors reviewed and summarized the legal effect of Chapter 813, Session Laws of 1955:

> "Here is a simple and clear rule which eliminates all doubt as to the standing and rights of an adopted child. For all legal purposes he is in the same position as if he had been born to his adoptive parents at the time of the adoption. There is no need for any learned and complicated interpretations. Whatever the problem is concerning an adopted child, his standing and his legal rights can be measured by this clear test: 'What would his standing and his rights be if he had been born to his adoptive parents at the time of the adoption?' If lawyers and courts will look to this plain language of the statute, and avoid making exceptions not made in this statutory statement, persons adopting children in North Carolina can legally realize what they have hoped for, namely that the child they adopt will become their child, theirs fully, just as if he had been born to them, and without any exceptions and qualifications imposed by law to thwart their purpose."

Chapter 813, Session Laws of 1955 is made retroactive to obviate the objection raised in *Wilson v. Anderson, supra.* "The provisions of this Act shall apply to adoptions, whether granted before or after the effective date of the Act, and Section 9 declared the effective date 1 July 1955. Here then is explicit language by the Legislature that the right of an adopted child to take property as a result of intestacy occurring subsequent to 1 July 1955, should be governed and controlled by the statutes of descent and distribution." *Bennett v. Cain, supra.*

The appellees have argued that Hamilton B. Tatum is not issue of the legatee Robah B. Tatum and, therefore, the legacy lapsed under G.S. 31-42.1. Even if it be conceded the adoption statute does not repeal all inconsistent provisions of law, as it provides, and does not in effect constitute the adopted child issue, (and we make no such concession) nevertheless, his rights to claim the legacy and prevent its lapse is protected by the alternative provision of the section. . . . *"or would have been a distributee of the estate of the testator if the legatee had survived the testator and there had been no will."* (emphasis added)

Any provision of law which prevented an adopted child from sharing in property by descent or distribution in the same manner and to the same extent as a natural born child, was swept away by the repealing clause in Chapter 813, Session Laws of 1955. In language too clear for misunderstanding, the Legislature has provided that an adopted child from the date of its adoption shall have the same property rights as a natural born child from the date of its birth. In order to implement this legislative command, we must hold that Hamilton B. Tatum is entitled to receive the share given to his adoptive mother in the will of Nancy E. Bencini. Nothing in the will indicates any intent to the contrary.

The judgment of the Superior Court of Guilford County is
Reversed.

WINBORNE, C.J., dissenting. I am unable to agree with the majority opinion. The single question presented for decision on this appeal is whether or not an adopted child comes within the provisions of the North Carolina anti-lapse statute, 31-42.1, so that a legacy of personal property to an adoptive parent who predeceases the testator will pass to the adopted child instead of lapsing.

G.S. 31-42.1 provides as follows: "Unless a contrary intent is indicated by the will, where a legacy of any interest in personal property not terminable at or before the death of the legatee is given to a legatee, who predeceases the testator, such legacy does not lapse but passes to such issue of the legatee as survive the testator in all cases

where the legatee is issue of the testator or would have been a distributee of the testator if the legatee had survived the testator and there had been no will."

This section of the General Statutes of North Carolina is in contravention of the common law, and therefore must be strictly construed. *Smith v. Smith,* 58 N.C. 305; *Bennett v. Cain,* 248 N.C. 428, 103 S.E. 2d 510. Indeed, this Court in *Farnell v. Dongan,* 207 N.C. 611, 178 S.E. 77, said: "The statute is not ambiguous. The intention of the General Assembly in its enactment is expressed in language which leaves no room for judicial construction."

Is the defendant appellant "issue of the legatee" within the meaning of the anti-lapse statute? This Court has held that the word "issue" does not include adopted children, but is limited to bodily issue. *Bradford v. Johnson,* 237 N.C. 572, 75 S.E. 2d 632. In that case *Denny, J.,* speaking for the Court, said: "The natural and ordinary meaning of the word 'issue' is understood to include only a child or children born of the marriage of the ancestor or their descendants * * * ."

Therefore, this definition of "issue" being the natural and ordinary meaning of the word, it must be presumed that the General Assembly used the word in its natural and ordinary sense. Indeed, as shown by *Wilson v. Anderson,* 232 N.C. 212, 59 S.E. 2d 836; *Bradford v. Johnson, supra;* and *Bennett v. Cain,* 248 N.C. 428, 103 S.E. 2d 510, legislation affecting the rights of the adopted child has been enacted piecemeal by the legislature and so interpreted by this Court.

It must also be noted that when the General Assembly re-wrote the entire law of descent and distribution in 1959, it was careful to clarify those statutes concerning the adopted child. But no change was made in the language of the anti-lapse statute.

In fine, there is nothing to indicate that the General Assembly intended to change the natural and ordinary meaning of the word as set out in the *Bradford* case, *supra.*

The majority apparently bases its decision on the language of G.S. 48-23. However, in so doing, clear language of this Court on this matter is entirely overlooked. In *Bradford v. Johnson, supra,* it is said: "Regardless of any provisions that may be contained in an adoption law with respect to the parent and child relationship, or the right of an adopted child to take by, through, and from its adoptive parents, the adoption of a child under such law does not make such adopted child a lawfully begotten heir of the bodies of the adoptive parents." See also *Barton v. Campbell,* 245 N.C. 395, 95 S.E. 2d 914.

Furthermore, the provision of G.S. 31-42.1 set out in the majority opinion as an "alternative provision" has no applicability. This clause, "or would have been a distributee of the estate of the testator if the

legatee had survived the testator and there had been no will" merely defines who the legatee is with respect to the testator and under no circumstances upon the facts of the present case can be interpreted to define who is to take under the anti-lapse statute.

Therefore, the conclusion is that the word "issue" as used in G.S. 31-42.1 does not include an adopted child. "Whether this distinction should be abandoned in the law of this State, as having no sound basis under modern social and economic conditions, is a matter for the General Assembly, and not this Court, to determine." *Farnell v. Dongan, supra.*

I vote to affirm.

PARKER, J., joins in dissent.